2003 ME 127

**Larry PHILLIPS et al.**

v.

**Blaine JOHNSON et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 24, 2003.

Decided: Oct. 31, 2003.

---

Richard C. Cleary, Cleary Law Office, P.A., Houlton, for plaintiffs.

Samuel W. Lanham Jr., Cuddy & Lanham, Bangor, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] In this action regarding the ownership of an island located on Wytopitlock Lake, in Aroostook County, defendants Blaine Johnson, Cheryl Cropley, and Karen Gallant appeal from an order of the District Court (Houlton, *Griffiths, J.*) denying their motion for relief from summary judgment and to file a late answer, affirmative defenses, answer, counterclaim, and opposition to summary judgment. The defendants also appeal from an order of the court denying their motion to extend time for filing notice of appeal pursuant to M.R.App. P. 2(b)(5). Plaintiffs Larry, Gary, and Addison Phillips have moved for dismissal of the appeal as untimely pursuant to M.R.App. P. 4(c).

[¶ 2] We deny the plaintiffs' motion to dismiss the defendants' appeal and vacate the court's denial of the motion to extend time for filing notice of appeal. Addressing the appeal on the merits, we vacate the denial of the defendants' motion for relief from the summary judgment, and to file late pleadings, and remand for further proceedings.

## I. BACKGROUND

[¶ 3] The parties are engaged in a dispute regarding the ownership of an island located on the southern end of Wytopitlock Lake in Glenwood Plantation, Aroostook County. In 1923, Isaiah Pierce first settled the island by building a small camp on it. Pierce and his spouse, Mabel, had six children, including son Donald and daughter Audrey. In the present action, the Donald Pierce branch of the family (Larry, Gary, and Addison Phillips) has commenced an action against the Audrey Pierce Emerson branch (Blaine Johnson, Cheryl Cropley, and Karen Gallant), and other branches, to quiet and establish title to the island first settled by Isaiah Pierce.

[¶ 4] On November 2, 2001, the Phillipses filed an action to quiet and establish title, pursuant to 14 M.R.S.A. §§ 6651–6658 (2003),[1] against multiple family members, including "Blaine Johnson, Cheryl Lawrence [now Cropley], and Karen Gal-

---

1. The service requirements for proceedings to quiet title are set forth in section 6653:

    Service in such action shall be made as in other actions on all supposed known claimants residing either in the State or outside the State, and notice to persons who are *unascertained, not in being or unknown* shall be given by publication as in other actions where publication is required, unless the court on motion permits posting in such public places as the court may direct in lieu of all or part of the publication ordinarily required.

    14 M.R.S.A. § 6653 (2003) (emphasis added).

lent."[2]  At the same time, the plaintiffs also submitted a motion for service by publication pursuant to M.R. Civ. P. 4(g),[3] accompanied by the supporting affidavit of their attorney.

[¶ 5] On November 5, 2001, the court granted the plaintiffs' motion to serve by publication, requiring the filing of a written answer to the complaint within twenty days after the first publication.  On January 2, 2002, the plaintiffs filed an affidavit of publication stating that the order was published in the *Houlton Pioneer Times* on November 14, 21, and 28, 2001.  The defendants failed to appear or file responsive pleadings before the time period designated by the court expired.

[¶ 6] Sometime in late November or early December 2001, Johnson, Cropley, and Gallant learned that the complaint had been published in the paper and Johnson contacted their attorney.  Johnson later averred: "since the inception of this action ... [the defendants' attorney] and [the plaintiffs' attorney] were working together to resolve this matter on an amicable basis .... [The plaintiffs' attorney] has known since late in 2001 that my sisters and I have vigorously contested any attempt" to wrest the property away.  The defendants did not, however, file any response to the action, apparently believing that they would be served in another way if the negotiations failed.

[¶ 7] After notifying the defendants' attorney by letter dated January 15 that they would seek a default judgment within twenty days, the plaintiffs moved for summary judgment on March 29, 2002.  The plaintiffs' motion and accompanying statement of material facts included a supporting affidavit from Larry Phillips, and a copy of a release deed by which Phyllis Phillips, daughter of Donald Pierce and spouse of Addison Phillips, purported to convey an interest in the family island to herself, her husband, and her children, Larry and Gary Phillips.  The plaintiffs asserted that their submissions established that they owned the property and that the defendants failed to dispute their claim to it.

[¶ 8] On April 25, 2002, the court granted the plaintiffs' motion for summary judgment, vesting title to the property in the plaintiffs, barring all claims in the property by all defendants, and awarding costs against any defendants who asserted claims adverse to the plaintiffs.

[¶ 9] On May 3, 2002, the defendants moved to file late responsive pleadings, including an answer, affirmative defenses, a counterclaim, and material in opposition to summary judgment.  The responsive pleading failed to provide a proper opposing statement of material facts as required by M.R. Civ. P. 56(h)(2).[4]  The motion to

---

2.  The parties do not raise any issues relating to the use of Cheryl Cropley's maiden name or the misspelling of Karen Gallant's name in the complaint.

3.  In relevant part, M.R. Civ. P. 4(g) states that "[t]he court, on motion upon a showing that *service cannot with due diligence be made by* another prescribed method, shall order service by publication." M.R. Civ. P. 4(g)(1). The rule states that "[t]he first publication of the summons shall be made within 20 days after the order is granted" and that "[s]ervice by publication is complete on the twenty-first

day after the first publication." M.R. Civ. P. 4(g)(3).

4.  Rule 56(h)(2) provides, in pertinent part:

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

file late pleadings asserted that the defendants had not been personally served with process and that service by publication was inadequate. The affidavits of Johnson, Gallant, and Cropley averred that none of the three had ever been personally served with a complaint and summons, but conceded that their mother had informed them soon after the publication that the *Houlton Pioneer Times* had published a notice of the complaint. Johnson's affidavit identified this time period as either November or December 2001, and he indicated that he called his attorney as soon as he learned that the suit had been filed against him.

[¶ 10] In support of their motion, the defendants asserted that the plaintiffs' affidavit of diligent search was inadequate to support service by publication and that the plaintiffs had misrepresented the facts known about the defendants' whereabouts. The defendants also submitted a copy of a quitclaim deed, dated April 30, 1982, by which Audrey Pierce Emerson purported to convey her interest in the island property to her children, Lawrence (now Cropley), Gallant, and Johnson.

[¶ 11] On August 2, 2002, the defendants filed an amendment to their motion to file late responsive pleadings. The amend-ment requested relief pursuant to M.R. Civ. P. 55(c)[5] to set aside any default judgment, and M.R. Civ. P. 60(b)[6] to obtain relief from the summary judgment. The defendants included the affidavits of Johnson, Gallant, and Cropley in their amended motion. The affidavit of Cropley stated that, with the possible exception of one year, she has paid all of the local property taxes for the Wytopitlock Lake island and that the town manager has her correct address.

[¶ 12] The plaintiffs responded to the defendants' motions by asserting that the defendants had received actual notice and had nonetheless failed to file a response of any kind. In addition to the service by publication, which resulted in actual notice, the plaintiffs' attorney mailed a copy of the complaint to one of Blaine Johnson's addresses, provided the defendants' attorney a copy of the complaint, notified the defendants' attorney that he would be seeking a default judgment unless a response was forthcoming, and made the defendants' attorney aware of the impending motion for summary judgment. The plaintiffs also disputed the defendants' allegations of misrepresentations regarding the plaintiffs' diligence preceding their motion for service by publication.[7]

The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation . . . .

5. Pursuant to M.R. Civ. P. 55(c), "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

6. M.R. Civ. P. 60(b) allows the court to relieve a party from final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

7. Among other facts, the plaintiffs noted that they had not had contact with Cropley for eight to ten years and that she was known to them as Cheryl Lawrence, not Cheryl Cropley;

[¶ 13] On August 15, 2002, the court held a hearing regarding the defendants' motions. Following the hearing, the court denied the defendants' motions in an order entered on August 29, 2002. The court found that service by publication was achieved through "a Clerk's Certificate which was published in the Houlton Pioneer Times on November 14, 2001, November 21, 2001, and November 28, 2001," and that the plaintiffs' attorney "provided [the defendants' attorney] with a copy of the Summons, Complaint of Action to Quiet Title, Motion for Service by Publication, and Acknowledgment of Receipt of Summons and Complaint with a request that [the defendants' attorney] sign the acknowledgment form and return it at his earliest convenience." The court made no findings on the defendants' allegations of insufficient diligence or misrepresentation. Ultimately, the court concluded that, despite having actual notice of the complaint and summons through notice by publication in November 2001, and copies thereof having been provided to their attorney, the defendants failed to file a responsive pleading until May 3, 2002. Accordingly, the court declined to grant relief from the summary judgment.

[¶ 14] On September 19, 2002, the defendants filed a notice purporting to appeal from the court's order of August 29 denying their motions.[8] The defendants' notice, however, erroneously directed the appeal to the Superior Court pursuant to M.R. Civ. P. 76D,[9] rather than to the Law Court pursuant to M.R.App. P. 2(a)(1). On September 26, 2002, the defendants filed an amendment to their notice of appeal, requesting that the court "delete 'appeal to the Superior Court' and substitute in its place 'appeal to the Law Court.'"

[¶ 15] On October 8, 2002, the defendants moved, in the District Court, to extend the time for filing a notice of appeal pursuant to M.R.App. P. 2(b)(5),[10] citing excusable neglect. The defendants noted that their amendment to their notice of appeal was filed after the expiration of the original time limit of September 19, 2002, but within the twenty-one-day extension period for excusable neglect pursuant to M.R.App. P. 2(b)(5). On October 10, 2002, the District Court denied the defendants' motion to extend time for filing notice of appeal pursuant to M.R.App. P. 2(b)(5), and deemed the amended notice of appeal untimely filed.

[¶ 16] The plaintiffs then moved to dismiss the defendants' appeal as untimely pursuant to M.R.App. P. 4(c). On October 22, 2002, the defendants filed a timely notice of appeal to the Law Court from the court's order of October 10, 2002, denying their motion to extend time. The notice of

---

that they do not know Gallant and that she was listed under her husband's name in the phone book; and that Johnson had multiple addresses (with different addresses used even by his own attorney in the pleadings) and that he was difficult to locate for service in a prior unrelated proceeding.

8. Pursuant to M.R.App. P. 2(b)(3), "[t]he time within which an appeal may be taken in a civil case shall be 21 days after entry of the judgment or order appealed from unless a shorter time is provided by law."

9. M.R. Civ. P. 76D governs appeals to the Superior Court of certain specified judgments of the District Court. Where no statutory authorization exists for appeal from the District Court to the Superior Court, the Law Court reviews judgments of the District Court pursuant to 4 M.R.S.A. § 57 (Supp. 2002).

10. M.R.App. P. 2(b)(5) provides:

Except when prohibited by statute, upon a showing of excusable neglect, the court may, before or after the time has expired, with or without motion and notice, extend the time for filing the notice of appeal otherwise allowed for a period not to exceed 21 days from the expiration of the original time prescribed by this subdivision.

appeal stated, however, that it was filed pursuant to M.R. Civ. P. 76D rather than M.R.App. P. 2(b)(3). We consolidated the defendants' appeals of the court's orders of August 29, 2002, and October 10, 2002, as well as the plaintiffs' motion to dismiss pursuant to M.R.App. P. 4(c).

## II. DISCUSSION

### A. Timeliness of Notices of Appeal

■ [¶ 17] An appeal from a judgment of the District Court in a quiet title matter must be filed within twenty-one days of the entry of judgment and proceeds directly to the Law Court. M.R.App. P. 2(b)(3); 4 M.R.S.A. § 57 (Supp. 2002).

[¶ 18] We have held that an appeal is cognizable, despite being directed to the wrong court, if the notice of appeal is otherwise valid and timely, immediate steps are taken to correct the error, and the steps taken to correct the error are undertaken within the period of extension allowed by the Rules. *In re Amanda D.,* 549 A.2d 1133, 1134 (Me.1988). That is precisely what occurred here. The defendants filed their notice of appeal within twenty-one days, identified the error before the end of the extension period, moved to correct the error through two different methods, and consistently prosecuted the appeal.

[¶ 19] By contrast, in *Chase Home Mortgage Corp. v. Hider,* 2000 ME 46, 747 A.2d 1193, the case upon which the plaintiffs rely, the appellant failed to take actions to correct his error in appealing to the Superior Court rather than the Law Court within the time for filing a motion to extend the period of appeal. In fact, the appellant failed to direct the appeal to the correct court until after the appeal had been dismissed by the Superior Court for lack of jurisdiction. *Id.* ¶ 2, 747 A.2d at 1194. *See also Green Tree Fin. Corp. v. Patten,* 2000 ME 42, ¶¶ 16–17, 746 A.2d 373, 376–77 (dismissing appeal when plaintiff failed to appeal to the proper court until approximately eight months after the entry of a final judgment of foreclosure). The defendants in the present case, in stark contrast, made appropriate efforts to correct their error.

■ [¶ 20] The Rules of Appellate Procedure are to be "construed to secure the just, speedy, and inexpensive determination of every appeal." M.R.App. P. 1. They are not intended to bar appellate review when inconsequential errors are made. We therefore conclude that when a notice of appeal is filed within the twenty-one-day period prescribed by M.R.App. P. 2(b)(3) and served on the opposing party, but directed to the wrong court, and when the error in the appeal is corrected and brought to the attention of the opposing party and the court through a motion to extend that is filed within the brief twenty-one-day period of extension pursuant to M.R.App. P. 2(b)(5), the court exceeds the bounds of its discretion when it declines to allow the extension, unless other facts, not existing here, support the denial.[11] We therefore vacate the court's denial of the motion to extend time for filing the appeal from the August 29 order. Similarly, we conclude that the notice of appeal from the

---

11. It is not surprising that a trial court would conclude that failure to comply strictly with the rules governing appeal to the Law Court would normally lead to a denial of the defendants' motion to extend time to file notice of appeal. *See, e.g., Bourke v. City of South Portland,* 2002 ME 155, ¶ 4, 806 A.2d 1255, 1256 (holding that strict compliance with the time limits prescribed by M.R.App. P. 2(b) is a prerequisite to the Law Court entertaining an appeal). In the present case, however, the defendants' error did not delay the appeal beyond the allowable extension period and did not lead the opposing party to assume that no appeal would be pursued.

October 10 decision was adequate despite its citation of the improper rule. *See* M.R.App. P. 1. Accordingly, we deny the plaintiffs' motion to dismiss, and address the merits of the appeal.

### B. Denial of Motion for Relief From the Summary Judgment

[¶ 21] The defendants next challenge the court's denial of their request to file responsive pleadings and for relief from the summary judgment. The court based its denial of the requested relief on its conclusion that the defendants had received notice and an opportunity to respond, but failed to do so.

[¶ 22] There are several issues presented. First, we review the trial court's original decision granting a motion for service by publication for abuse of discretion. *Margani v. Sanders,* 453 A.2d 501, 505 (Me.1982). We next address the court's factual finding that the defendants received actual notice. Finally, in light of the allegations of fraud by the moving party, we review the court's legal conclusion that actual notice was sufficient. The court's factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *QAD Investors, Inc. v. Kelly,* 2001 ME 116, ¶ 13, 776 A.2d 1244, 1248.

[¶ 23] Regarding the court's initial order granting the motion for service by publication, M.R. Civ. P. 4(g)(1) provides, "[t]he court, on motion upon a showing that service cannot with due diligence be made by another prescribed method, shall order service by publication." *See also* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4.12 at 95 (2d ed. 1970) ("Publication is available ... only upon failure after using due diligence to get service by another prescribed method more likely to give actual notice to the defendant, and then only upon order of court."). Based on the information before the court when it first adjudicated the motion for service by publication, we find no abuse of discretion in the court's initial decision to grant the motion on November 5, 2001.

[¶ 24] We turn to the defendants' second contention, that is, that actual notice will not suffice. Because actual notice is the ultimate goal of any form of service, the discovery of a technical defect in service will not ordinarily negate the notice when actual notice is accomplished. *See Peoples Heritage Sav. Bank v. Pease,* 2002 ME 82, ¶ 14, 797 A.2d 1270, 1275 (" 'If the defendant has received actual notice by the method of service used, the court should hesitate in finding the service insufficient for some technical noncompliance ....' ") (quoting 1 Field, McKusick & Wroth, § 4.5 at 69). We have held, for instance, that technical noncompliance with M.R. Civ. P. 5(b), which requires service on a represented party's attorney, is harmless error when a defendant has timely actual notice and suffers no prejudice. *Moores v. Doyle,* 2003 ME 105, ¶ 10, 829 A.2d 260, 263; *cf. Peoples Heritage Sav. Bank v. White,* 1997 ME 204, ¶ 4, 704 A.2d 318, 319 (holding that the defendant's ultimate participation in the action by appearing at a conference with the court without raising service resulted in a waiver of claims relating to insufficiency of process).

[¶ 25] Here, there is no dispute that service by publication had the intended effect: the defendants learned that a suit had been filed against them. All three defendants averred in their affidavits that they learned about the complaint from their mother, who read about it in the paper. Their attorney was then in regular contact with the plaintiffs' attorney, who provided copies of all documents and later gave notice of the plaintiffs' intent to request a default judgment. Similarly, notwithstanding the failure of all defendants

to file appearances or answers, the plaintiffs provided the motion for summary judgment to the defendants' attorney and to Johnson. Thus, the court did not err in its factual finding that the defendants did receive notice. In ordinary circumstances, such actual notice is legally sufficient to trigger the defendants' responsibility to respond to the suit.

[¶ 26] The defendants assert, however, that notwithstanding their actual notice, the plaintiffs' alleged misconduct in seeking to serve the defendants by publication was so egregious that the court should have declined to recognize the notice. Thus, the question is not whether actual notice is sufficient when there is a defect in the method of service, but rather, whether service by publication obtained through fraudulent representations to the court will be countenanced.

[¶ 27] The unique nature of notice by publication demands that the applicant for such notice be scrupulous in the exercise of diligence and in representations made to the court.[12] Because service by publication should occur only when notice cannot be accomplished by other means, courts must be vigilant in assuring that this method of service is not obtained through fraud. *See Robinson Roofing & Remodeling, Inc. v. Clayton (Ex parte Robinson Roofing & Remodeling, Inc.),* 709 So.2d 444, 446 (Ala.1997) ("[A] judgment procured by fraud upon the court itself may be set aside . . . ."); *In re Estate of Roedell,* 253 Iowa 438, 112 N.W.2d 842, 844 (Iowa 1962) ("A judgment or decree based on jurisdictional fraud is void."). We now hold that, to assure the integrity of the court's actions in allowing service by

publication, a court may decline to accept as legally sufficient service by publication that was obtained through fraudulent means, even when that service results in actual notice. *Cf. Bonneville Billing v. Whatley,* 949 P.2d 768, 773 (Utah Ct.App. 1997) ("[I]f a plaintiff falsely avers or intentionally misleads a court to believe that he or she has exercised [due] diligence when he or she has not done so, the court . . . never had jurisdiction . . . ."); *Jones v. Buford,* 359 P.2d 232, 234 (Okla.1961) ("[A]ctual knowledge of a proceeding to obtain a tax deed does not relieve the person seeking the deed from complying with the applicable statutes relating to notice.").

[¶ 28] In the matter before us, the defendants raised substantial allegations of fraud, which the plaintiffs disputed. Although the court held a hearing, it did not address the issue of fraud because it determined that actual notice sufficed. We conclude, however, that in the face of allegations of fraud, the finding of actual notice is not enough. When substantial allegations of fraud in pursuit of service by publication have been raised, the court must determine whether the allegations are accurate before determining whether actual notice is sufficient. Service by publication that is obtained through a fraud on the court should not be countenanced and will ordinarily require new service. *See Robinson Roofing & Remodeling,* 709 So.2d at 446; *Roedell,* 112 N.W.2d at 844; *Bonneville Billing,* 949 P.2d at 773. In contrast, inaccuracies or errors that do not constitute fraud will not ordinarily result in treating actual notice as a nullity. *See Benjamin v. Grosnick,* 999 F.2d 590, 592

**12.** When a party's identity and location are "reasonably ascertainable," notice by publication is "not reasonably calculated to provide actual notice of the pending proceeding." *Mennonite Bd. of Missions v. Adams,* 462 U.S.

791, 795, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

(1st Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994) (holding that a party is not prejudiced by defective service when he or she receives actual notice of a lawsuit and has time to answer it).[13]

[¶ 29] The plaintiffs vigorously disputed the defendants' allegations of fraud. In the absence of a factual determination regarding the allegations of fraud, we cannot determine whether the finding of sufficient service upon which the court based its denial of the motion for relief should be affirmed or set aside. Accordingly, we vacate the denial of the motion for relief from judgment and remand to the trial court for findings on the allegations of fraud in the motion for service by publication. Because the trial judge has since moved to active retired status, and may not be available to hear this matter, any judge may hear the matter on remand and may, in the discretion of that judge, take additional evidence on the question of the basis for service by publication.

The entry is:

Motion to dismiss the appeal denied. Order of October 10, 2002, denying extension of time to file appeal vacated. Denial of the motion for relief from summary judgment vacated. Case remanded for further proceedings consistent with this opinion.

---

**13.** In either instance, the court retains the discretion to accept or reject the efficacy of the service based on a review of the entirety of the circumstances.